## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENVIRONMENTAL INTEGRITY PROJECT<br>1000 Vermont Avenue NW, Suite 1100<br>Washington, DC 20005,<br><br>SIERRA CLUB<br>2101 Webster Street, Suite 1300<br>Oakland, CA 94612,<br><br>     *Plaintiffs*,<br><br>     v.<br><br>MICHAEL REGAN, in his official capacity<br>as Administrator of the U.S. Environmental<br>Protection Agency,<br>Mail Code 1101A<br>1200 Pennsylvania Avenue NW<br>Washington, DC 20460,<br><br>     *Defendant*. | Civil Action No. 1:22-cv-3063<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.      Plaintiffs Environmental Integrity Project and Sierra Club bring this civil action for declaratory and injunctive relief pursuant to the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, seeking to compel Defendant Michael Regan ("Administrator"), in his official capacity as Administrator of the United States Environmental Protection Agency ("EPA") to perform a nondiscretionary duty prescribed by the Act.  Specifically, Plaintiffs seek to compel EPA to perform its duty to approve or disapprove Texas' proposed revision to its federal State Implementation Plan, which was submitted to EPA on August 20, 2020.

2.      Under the Clean Air Act, EPA is required to establish National Ambient Air Quality Standards ("NAAQS"), which are nationally applicable, health-based standards

establishing permissible concentrations of six common (or "criteria") air pollutants known to be harmful to human health and the environment, including particulate matter. 42 U.S.C. § 7409. State Implementation Plans consist of EPA-approved regulations and documents used by a state to attain and maintain compliance with the federal NAAQS, and to fulfill other requirements of the Clean Air Act.

3.     On July 29, 2020, Texas proposed a SIP revision requesting that EPA incorporate eight agreed orders issued by the Texas Commission on Environmental Quality ("TCEQ") to the operators of eight coal-fired power plants located in Texas into the Texas SIP. *See* Ex. 1, July 29, 2020 SIP Revision and Agreed Orders ("SIP Revision").[1]  The SIP Revision purports to establish, for the first time, federally-enforceable SIP requirements for the control of particulate matter ("PM") emissions from the subject power plants during periods of planned maintenance, startup, and shutdown ("MSS").  *Id*. at iv ("The SIP revision makes the opacity and PM operational limits and work practices for periods of planned MSS … federally enforceable in the SIP so that emission limitations apply on a continuous basis[.]").

---

[1] The eight subject power plants are: AEP Southwestern Electric Power's H.W. Pirkey Power Plant in Harrison County; Lower Colorado River Authority's Sam Seymour Fayette Power Project in Fayette County; Luminant Generation Company's Martin Lake Steam Electric Station in Rusk County; NRG Texas Power's Limestone Electric Generating Station in Limestone County; San Miguel Electric Cooperative's San Miguel Electric Plant in Atascosa County; Southwestern Public Service Company's Harrington Station in Potter County; Texas Municipal Power Agency's Gibbons Creek Steam Electric Station in Grimes County; and Public Service Company of Oklahoma's Oklaunion Power Station in Wilbarger County.  Plaintiffs understand that four of these power plants have ceased operations or are in the process of converting from coal-fired power plants to natural gas-fired power plants, or will cease operations or convert to natural gas in the near future.  While Plaintiffs believe that retirement or conversion to natural gas will make four of the agreed orders in Texas's SIP Revision submission unnecessary, Plaintiffs are not aware that Texas has withdrawn the agreed orders for these four power plants from its pending SIP Revision submission.

4.      Contrary to Texas's claim in its submission, the Texas SIP already contains PM and opacity emission limits that apply to the subject power plants during periods of planned MSS.  *See, e.g., In the Matter of Southwestern Electric Power Company, H.W. Pirkey Power Plant*, Order on Petition No. VI-2014-01 (Feb. 3, 2016) at 9 (explaining that Texas's SIP establishes PM and opacity limits that apply to the Pirkey power plant and does "not provide for alternative standards for … SIP opacity and PM limits during periods of planned MSS."). Plaintiffs have submitted numerous comments opposing Texas's proposed SIP Revision on the grounds that it would exempt the subject power plants from these existing limits and because Texas has not shown that these exemptions are protective of the NAAQS and public health. *See generally* Ex. 2, Letter to David Garcia (EPA Region 6) RE: Texas SIP Limits (Aug. 18, 2021).

5.      Upon submission of a SIP or SIP revision to EPA, EPA must determine whether it meets the minimum criteria for submissions within 60 days of receipt. 42 U.S.C. § 7410(k)(1)(B). If EPA has not determined a submission fails to meet the minimum criteria within six months of receipt, it is deemed complete by operation of law. *Id.* The Administrator must approve or disapprove a SIP submittal (either in full or in part) within 12 months of a completeness determination or determination deemed by operation of law. § 7410(k)(2)-(3).

6.      Texas submitted its SIP Revision to EPA on August 20, 2020. Ex. 3, Email from John Minter, TCEQ Staff Attorney to Gabriel Clark-Leach, Re: Power Plant Agreed Orders (June 21, 2021) (stating TCEQ submitted the SIP Revision to EPA on August 20, 2020). As of the date of this filing, EPA has not approved or disapproved Texas's SIP Revision, either in full or in part, as required by 42 U.S.C. § 7410(k)(2) of the Clean Air Act.

7.      EPA's failure to timely act on Texas's SIP Revision submission has caused the subject power plants to delay steps necessary to comply with existing Texas SIP PM control

requirements.  Until EPA acts on the SIP Revision, the subject power plants will continue to emit uncontrolled bursts of dangerous PM pollution for hundreds, and in some cases thousands of hours each year, even though Texas has not demonstrated that these emissions are protective of public health and the environment.

8.      The Administrator's delay in approving or disapproving the SIP Revision thus harms Plaintiffs and frustrates their ability to ensure these facilities' compliance with the requirements of the Clean Air Act and federally enforceable SIP of Texas. Accordingly, Plaintiffs respectfully request that this Court issue an order: (1) declaring that EPA, through Administrator Regan, is required to approve or disapprove the SIP Revision; (2) declaring that the Administrator has failed to perform this non-discretionary duty; and (3) requiring the Administrator to approve or disapprove the SIP Revision by no later than January 9, 2023.

### JURISDICTION, VENUE, AND NOTICE

9.      This Court has subject matter jurisdiction over the claims set forth in this complaint pursuant to the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604(a)(2), which authorizes any person (after 60-day notice) to commence a civil action against the Administrator to compel the performance of a nondiscretionary duty under the Act.

10.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1346 (United States as defendant), as the Clean Air Act is a federal statute and the Administrator is an agent of the United States government.

11.      The relief requested is authorized pursuant to 42 U.S.C. § 7604(a) of the citizen suit provision and 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act). The Clean Air Act authorizes this Court to award attorneys' fees and costs of litigation "to any party, whenever the court determines such award is appropriate." 42 U.S.C. § 7604(d); *see also* 28 U.S.C. § 2412

(generally authorizing courts to award costs and attorneys' fees to plaintiffs in civil actions against the United States).

12.     Defendant is an officer of the United States acting in his official capacity who official resides within this District, a substantial part of the alleged events or omissions giving rise to Plaintiffs' claims occurred in this District, and at least one plaintiff physically resides in this District. Thus, venue is proper in this Court, pursuant to 28 U.S.C. § 1391(e)(1).

## NOTICE

13.     On July 27, 2022, Plaintiffs served the Administrator with written notice of the violation alleged in this Complaint and of Plaintiffs' intent to sue, via certified first-class mail and email, as required by 42 U.S.C. § 7604(b)(1)(A) and EPA's regulations.  40 C.F.R. § 54.2(a) (requiring notice to the Administrator to be served by certified mail).  *See* Ex. 4, Notice of Intent Letter & USPS Certified Mail Return Receipt.

14.     More than 60 days have passed since the Administrator received this notice, and the Administrator has not acted to remedy the violation alleged in this Complaint.

15.     Plaintiffs have served a copy of the Complaint simultaneously upon the Attorney General of the United States and the EPA Administrator as required by 42 U.S.C. § 7604(c)(3).

## PARTIES

16.     Plaintiff Environmental Integrity Project ("EIP") is a national nonprofit corporation headquartered in Washington, D.C., with offices and programs in Texas founded to advocate for the effective enforcement of state and federal environmental laws, with a specific focus on the Clean Air Act and large stationary sources of air pollution, like chemical plants, petroleum refineries, and power plants. For nearly a decade, EIP has submitted numerous petitions and comments opposing TCEQ's efforts to exempt emissions from these power plants

(and other facilities) from clear federal emission limitations during periods MSS. *See generally* Ex. 2. EPA's failure to issue a timely determination regarding the SIP Submission adversely affects EIP's ability to ensure that major sources of air pollution in the state of Texas comply with federally enforceable public health protections.

17.     Plaintiff Sierra Club is a nonprofit corporation organized and existing under the laws of the State of California, with its headquarters located in Oakland, California.  The Sierra Club is a national membership organization dedicated to the protection of public health and the environment, including clean air, with over 780,000 members who reside in all 50 states, the District of Columbia, and U.S. territories.  Sierra Club's Lone Star Chapter is the oldest environmental grassroots organization in Texas and includes more than 27,000 members across the state.

18.     Plaintiff Sierra Club's members live, work, recreate, travel, and engage in other activities throughout areas affected by particulate matter emissions from the subject power plants and will continue to do so on a regular basis.  Uncontrolled particulate matter pollution emitted from the subject power plants during planned MSS activities threatens and damages, and will continue to threaten and damage, the health and welfare of Plaintiff Sierra Club's members, as well as their ability to engage in and enjoy their other activities.  Uncontrolled particulate matter pollution from the subject power plants diminishes Sierra Club's members' ability to enjoy the aesthetic qualities and recreational opportunities of the affected areas.

19.     EPA's failure to timely act on Texas's SIP Revision exempting the subject power plants from particulate matter and opacity limits in the Texas SIP harms Plaintiff Sierra Club's members by prolonging their exposure to uncontrolled particulate matter emissions from the subject power plants during periods of planned MSS.  Plaintiffs contend that these uncontrolled

emissions are contrary to the Texas SIP and that Texas has failed to demonstrate that the requested SIP Revision is protective of public health and the environment.  Until EPA acts to approve or disapprove the SIP Revision, the subject power plants will not take action to comply with particulate matter and opacity limits in the Texas SIP during periods of planned MSS.

20.     EPA's action is also required to resolve a question about the applicability of existing Texas SIP particulate matter and opacity emission limitations to the eight subject power plants created by the SIP Revision submission.  According to Texas's SIP Revision submission, existing Texas SIP particulate matter and opacity emission limitations do not apply to the subject power plants during periods of planned MSS.  Thus, while its SIP Revision submission remains pending, Texas has taken the position that the subject power plants need not comply with Texas SIP particulate matter and opacity emission limits during planned MSS activities.  Accordingly, the subject power plants have declined to make changes necessary to effectively reduce particulate matter emissions during these activities.

21.     Consequently, until EPA acts on Texas's SIP Revision submission and resolves the question of the current applicability of PM and opacity emission limitations in the Texas SIP, those who live, work, and recreate near the eight subject power plants will continue to be exposed to higher amounts of PM pollution than the Texas SIP allows.

22.     Defendant Michael Regan is the Administrator of the Environmental Protection Agency.  Administrator Regan is charged with the duty to uphold the Clean Air Act and to take required regulatory actions according to the schedules established by the Act, including the mandatory duty to approve or disapprove a state SIP submission within the statutory timeframe.

23.     For the foregoing reasons, the Administrator's failure to approve or disapprove the SIP Revision has caused, is causing, and will continue to injure Plaintiffs' organizational

interests as well as the concrete aesthetic, recreational, and health interests of their members, unless this Court grants the relief requested.  A court order requiring EPA to promptly undertake its mandatory duty to act on the SIP Revision would redress these injuries.

## LEGAL BACKGROUND

24.     The Clean Air Act, 42 U.S.C. §§ 7401-7671q, establishes a comprehensive program for controlling and improving the nation's air quality.  One central feature of the Act is the National Ambient Air Quality Standards, which are nationally applicable standards set by EPA establishing permissible concentrations of six common (or "criteria") air pollutants, including particulate matter.  42 U.S.C. §§ 7408-09.  *See* 40 C.F.R. pt. 50.

25.     The Clean Air Act requires each State to submit for EPA's approval a State Implementation Plan providing for the attainment and maintenance of the NAAQS and meeting the other requirements of the Act.  42 U.S.C. §§ 7410(a)(1), 7401(k).  Each SIP must contain, among other things, a "control strategy," which is a combination of measures designed to achieve the reduction of emissions necessary for attainment and maintenance of the NAAQS.  40 C.F.R. § 51.100(n).  SIP provisions must be enforceable as a practical matter.  Further, Clean Air Act Section 116, 42 U.S.C. § 7416, forbids implementation of any emission limitation that is less stringent than the applicable, EPA-approved SIP.

26.     Any revision to a SIP must meet the requirements of Clean Air Act section 110(l), which states that EPA cannot approve a SIP revision if the revision would interfere with any applicable requirement of the Clean Air Act regarding attainment, or reasonable further progress towards attainment, or any other applicable requirement of the Act. 42 U.S.C. § 7410(l).

27.     When a state submits a plan or plan revision, EPA must determine within 60 days whether the submitted plan or plan revision meets minimum completeness criteria specified by

the Act.  42 U.S.C. § 7410(k)(1)(B).  If EPA does not determine that a state submitted plan or

plan revision fails to meet minimum completeness requirements specified by the Act within six

months of receipt, the submission is deemed complete by operation of law. *Id.*  Within twelve

months after a plan or plan revision is determined to be complete or is deemed complete by

operation of law, EPA must approve, partially approve, or disapprove the plan or plan revision.

42 U.S.C. §§ 7410(k)(2), (3), (l).

        28.     The Texas SIP includes a prohibition on visible emissions (or "opacity")

exceeding 30 percent from any stationary source and 20 percent from source on which

construction was begun after January 31, 1972 over a six-minute period.  30 Tex. Admin. Code §

111.111(a)(1); 40 C.F.R. § 52.2270(c) (incorporating 30 Tex. Admin. Code § 111.111(a)(1) into

the Texas SIP).  Opacity is an indirect indication of the amount of particulate matter emitted by

an industrial source.  These Texas SIP opacity limitations are subject to the following express

exemption by rule:

> "Visible emissions during the cleaning of a firebox or the building of a new fire,
> soot blowing, equipment changes, ash removal, and rapping of precipitators may
> exceed the limits set forth in this section for a period aggregating not more than six
> minutes in any 60 minutes, nor mor than six hours in any 10-day period.  This
> exemption shall not apply to the emissions mass rate standard, as outlined in §
> 111.151(a) of this title (relating to Allowable Emission Limits)."

30 Tex. Admin. Code § 111.111(a)(1)(E).

        The Texas SIP does not establish an additional exemption from these opacity limits.

        29.     The Texas SIP also includes a prohibition on particulate matter emissions from

any solid fossil fuel-fired steam generator, or power plant, exceeding 0.3 pound of total

suspended particulate matter per million Btu heat input, averaged over a two-hour period.  30

Tex. Admin. Code § 111.153(b); 40 C.F.R. § 52.2270(c) (incorporating 30 Tex. Admin. Code §

111.153(b) into the Texas SIP.  This regulation does not establish any exemption to the particulate matter emission limit.

## FACTUAL BACKGROUND

30.      Texas submitted its SIP Revision to EPA on August 20, 2020. Exhibit F.

31.      EPA did not inform Texas that the SIP Revision submission failed to meet minimum completeness criteria specified by the Clean Air Act, and, accordingly, the submission was deemed complete by operation of law on February 20, 2021, six months after Texas submitted it to EPA.  42 U.S.C. § 7410(k)(1)(B).

32.      EPA was required to approve or disapprove (either in full or in part) the SIP Revision by February 20, 2022, one year after the SIP Revision was deemed complete by operation of law.  42 U.S.C. § 7410(k)(1)-(3).

33.      EPA failed to approve or disapprove (either in full or in part) the SIP Revision by this statutory deadline. On July 27, 2022, Plaintiffs notified the Administrator of their intent to sue him for failing to timely perform his nondiscretionary duty to act on the SIP Revision if he did not perform that duty within 60 days after receipt of the notice.

34.      As of the date of this filing, the Administrator has yet to approve, partially approve, or disapprove Texas's SIP Revision, though it is nearly eight months past the statutory deadline to do so.

## CLAIMS FOR RELIEF

**VIOLATION OF 42 U.S.C. § 7410(k)(2)**
**Failure to Perform Nondiscretionary Duty to Approve or Disapprove**
**Texas's SIP Revision Submission**

35.      Plaintiffs incorporate by reference all paragraphs listed above.

36.      Texas submitted its SIP Revision to EPA on August 20, 2020.

37.     Texas's SIP Revision was deemed complete by operation of law on February 20, 2021.  42 U.S.C. § 7410(k)(1)(B).

38.     EPA was required to approve or disapprove (in full or in part) the SIP Revision by February 20, 2022.

39.     EPA has not approved or disapproved the SIP Revision, either in full or in part.

40.     Therefore, EPA is in violation of its mandatory duty to approve, partially approve, or disapprove Texas's SIP Revision and has failed to perform nondiscretionary acts or duties within the meaning of 42 U.S.C. § 7604(a) of the Clean Air Act.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

A.  Declare that the Administrator is in violation of the Clean Air Act with regard to his failure to perform his mandatory duty to approve, partially approve, or disapprove Texas's SIP Revision by February 20, 2022, as required by 42 U.S.C. § 7410(k)(2);

B.  Issue a mandatory injunction requiring the Administrator to perform this mandatory duty by no later than January 9, 2023;

C.  Retain jurisdiction over this action in order to ensure compliance with the Court's order;

D.  Grant Plaintiffs their reasonable costs of litigation, including attorneys' fees; and

E.  Grant any such further relief as the Court deems just, proper, or necessary.

Respectfully submitted this the 10th Day of October, 2022,

s/ Sanghyun Lee
Sanghyun Lee
DC Bar No. 1632212
Environmental Integrity Project
1000 Vermont Avenue NW, Suite 1100
Washington, DC 20005
Telephone: (202) 263-4441

Facsimile: (202) 296-8822
SLee@environmentalintegrity.org

*Counsel for Plaintiffs*